## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ALDER CROMWELL, CODY KEENER, and PARKER BEDNASEK,**

     **Plaintiffs,**

     **v.**

**KRIS KOBACH, KANSAS SECRETARY OF STATE, and JAMIE SHEW, DOUGLAS COUNTY CLERK,**

     **Defendants.**

**Case No. 15-9300-JAR-JPO**

## <u>MEMORANDUM AND ORDER</u>

This case is brought on behalf of a putative class of Plaintiffs challenging the Kansas Documentary Proof of Citizenship law and a related regulation under the National Voter Registration Act and the United States Constitution.  Before the Court is Defendant Kansas Secretary of State Kris Kobach's Motion to Dismiss (Doc. 94), raising justiciability challenges to Plaintiffs' claims.  The motion is fully briefed and the Court is prepared to rule.  As described more fully below, Defendant's motion is granted in part and denied in part.  Plaintiffs Cromwell and Keener's claims are dismissed as moot.  And Plaintiff Bednasek's NVRA claims are dismissed for failure to comply with the NVRA notice requirement.  The Court proceeds to consider Plaintiffs' Motion for Class Certification (Doc. 60), which is also fully briefed.  The Court heard oral argument on this motion on June 14, 2016.  Having fully considered the arguments and evidence presented by the parties on the briefs and at the hearing, the Court denies this motion.

**I.      Background**

Under Kansas law, only United States citizens are eligible to register to vote.[1]  And

legally qualified voters must register in order to be eligible to vote.[2]  The Secure and Fair

Elections Act ("SAFE Act") became law in 2011.  It requires voter registration applicants to

submit documentary proof of citizenship ("DPOC") at the time they apply to register to vote:

> (l) The county election officer or secretary of state's office shall accept any
> completed application for registration, but an applicant shall not be registered
> until the applicant has provided satisfactory evidence of United States citizenship.
> Evidence of United States citizenship as required in this section will be satisfied
> by presenting one of the documents listed in paragraphs (1) through (13) of
> subsection (l) in person at the time of filing the application for registration or by
> including a photocopy of one of the following documents with a mailed
> registration application. After a person has submitted satisfactory evidence of
> citizenship, the county election officer shall indicate this information in the
> person's permanent voter file. Evidence of United States citizenship shall be
> satisfied by providing one of the following, or a legible photocopy of one of the
> following documents:
>
> (1) The applicant's driver's license or nondriver's identification card issued by the
> division of vehicles or the equivalent governmental agency of another state within
> the United States if the agency indicates on the applicant's driver's license or
> nondriver's identification card that the person has provided satisfactory proof of
> United States citizenship;
> (2) the applicant's birth certificate that verifies United States citizenship to the
> satisfaction of the county election officer or secretary of state;
> (3) pertinent pages of the applicant's United States valid or expired passport
> identifying the applicant and the applicant's passport number, or presentation to
> the county election officer of the applicant's United States passport;
> (4) the applicant's United States naturalization documents or the number of the
> certificate of naturalization. If only the number of the certificate of naturalization
> is provided, the applicant shall not be included in the registration rolls until the
> number of the certificate of naturalization is verified with the United States
> bureau of citizenship and immigration services by the county election officer or
> the secretary of state, pursuant to 8 U.S.C. § 1373(c);

---

[1]Kansas Constitution art. 5, § 1.

[2]K.S.A. § 25-2302.

(5) other documents or methods of proof of United States citizenship issued by the federal government pursuant to the immigration and nationality act of 1952, and amendments thereto;

(6) the applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number;

(7) the applicant's consular report of birth abroad of a citizen of the United States of America;

(8) the applicant's certificate of citizenship issued by the United States citizenship and immigration services;

(9) the applicant's certification of report of birth issued by the United States department of state;

(10) the applicant's American Indian card, with KIC classification, issued by the United States department of homeland security;

(11) the applicant's final adoption decree showing the applicant's name and United States birthplace;

(12) the applicant's official United States military record of service showing the applicant's place of birth in the United States; or

(13) an extract from a United States hospital record of birth created at the time of the applicant's birth indicating the applicant's place of birth in the United States.[3]

The DPOC requirement was made effective January 1, 2013.[4]  A person already registered to vote before January 1, 2013, is not required to resubmit evidence of citizenship.[5]

The Kansas Election Voter Information System ("ELVIS") database contains a statewide list of every registered voter, every voter registration applicant, and everyone who used to be a registered voter but was subsequently cancelled.  If an applicant has not provided DPOC, or if the application is otherwise missing required information, the record is designated as "in suspense" or "incomplete" until the application is completed.

Defendant Kobach promulgated K.A.R. § 7-23-15, which became effective on October 2, 2015.  The regulation applies where individuals whose registration applications have been

---

[3]K.S.A. § 25-2309(l). If an applicant is a United States citizen but unable to provide one of the thirteen forms of identification listed in subsection (l), the statute allows that applicant to submit another form of citizenship documentation by directly contacting the Secretary of State's Office.  In these cases, the state election board shall give the applicant an opportunity for a hearing before assessing the evidence of citizenship to determine whether it is satisfactory.  *Id.* § 25-2309(m).

[4]*Id.* § 25-2309(u).

[5]*Id.* § 25-2309(n).

deemed "incomplete."  Such applications are deemed "cancelled" from the State list of applicants if they do not produce DPOC, or otherwise cure the application, within 90 days of applying.[6]  When an application is cancelled due to lack of DPOC, that record is not removed from the ELVIS database.  If an applicant is in either incomplete or cancelled status, that individual is ineligible to vote.

Deputy Assistant Secretary of State Bryan Caskey submitted a declaration, explaining that part of his job responsibility is to verify the citizenship status of incomplete voter registration applicants.  Approximately once per month, the Secretary provides a list of names to the Department of Vital Statistics ("DVS") to compare to its database of birth certificates on file in Kansas.  The DVS shares its information on any matches with the Secretary of State, which then transmits the information to county election officials.  When the county election officials receive such citizenship information, they are authorized to change the applicants' status to "active," which adds them to the official list of registered voters.  The Secretary of State engages in a similar process with the Department of Motor Vehicles ("DMV"), periodically sending it a list of names to determine whether it possess DPOC for those individuals in its database.[7]

Plaintiff Alder Cromwell is a United States citizen, a Kansas resident, and a duly qualified elector for local, state and federal elections in Kansas. On or about March 27, 2015, Cromwell applied to register to vote in Kansas by filling out the Kansas Voter Registration Form and attesting under penalty of perjury to his United States citizenship and eligibility to vote.  On or around April 17, 2015, his application was received by the Douglas County Clerk's office.

---

[6]The parties use different language to describe the applicant's status under this regulation.  Plaintiffs refer to a cancelled application as a "purged" application.  Because cancelled is the word used in the regulation and database, the Court uses that term throughout this opinion.

[7]Caskey does not make clear exactly when information sharing began with the DVS and DMV.  His declaration states that "since 2013 or 2014, policies carried out by the [DVS], the [DMV], and the Office of the Secretary of State result in the sharing of citizenship document information."  Doc. 94-6, Ex. 1¶ 7.

Cromwell did not submit the requested documentation proving citizenship and received notification on or about April 27, 2015, that his application was designated "in suspense." On October 7, 2015, approximately one week after this case was filed, Caskey sent a list of incomplete applicants to the DMV that included Cromwell. On October 8, 2015, the DMV confirmed that it possessed DPOC for Cromwell; this information was transmitted to the Douglas County Election office. On November 10, 2015, ELVIS indicated that Cromwell was an active, registered voter.

Plaintiff Cody Keener is a United States citizen, a Kansas resident, and a duly qualified elector for local, state and federal elections in Kansas. On or about December 22, 2014, Keener went to the DMV to renew his driver's license. While he was there he opted to register to vote. His information was transmitted electronically to the Secretary of State's office, which then transmitted it to the Douglas County Clerk's office. On or about December 29, 2014, Keener was notified by the Douglas County Clerk's office that he had been placed in the statewide voter registration database and marked as "in suspense" because he had not submitted documentation of his United States citizenship. On October 1, 2015, one day after this case was filed, Caskey sent a list of incomplete applicants to the DVS that included Keener. On October 2, 2015, the DVS confirmed that it possessed a Kansas birth certificate for Keener. On October 6, 2015, ELVIS indicated that Keener was an active, registered voter.

Plaintiff Parker Blake Bednasek is a United States citizen, who recently moved to Kansas in August 2014 to attend school at the University of Kansas ("KU"). His family moved from Oklahoma to Tarrant County, Texas around the same time Bednasek entered KU. He pays non-resident tuition rates at KU. Like many students, Bednasek lived with his parents during the summer between his freshman and sophomore years, from June to mid-August 2015. In August

2015, he registered for the first time to vote in Texas. Bednasek also obtained a Texas driver's license on January 7, 2016, when he was visiting his parents' home.  He previously had an Oklahoma driver's license, which was about to expire. Bednasek's vehicle is registered in Texas and the insurance lists his parents' Texas address.  He co-owns the vehicle with his parents.

Bednasek began working as an unpaid intern for the Kansas Democratic Party in September 2015.  On December 3, 2015, Cheyenne Davis, a political and field director for the Kansas Democratic Party, approached Bednasek and asked if he would like to try to register to vote in Kansas without providing DPOC.  He admits that he has a birth certificate at his parents' house in Texas but chooses not to produce it because he does not agree with the Kansas DPOC law.

On or about December 3, 2015, Bednasek sent a letter to the Tarrant County, Texas Elections Office canceling his voter registration.  On or about December 4, 2015, Bednasek delivered in person to the Douglas County Clerk's office his completed Kansas Voter Registration Form in which he swore and affirmed he is a United States citizen and a Kansas resident.  On the form, he indicated that his Kansas residence was established on August 7, 2015, which was the same day that he moved into his current place of residence in Lawrence, Kansas. He considers himself a resident of Kansas.  The clerk told Bednasek that he needed to provide DPOC, but allowed him to submit the form without it.  Bednasek recalls receiving two letters from the county clerk's office in December 2015 and January 2016, telling him he was being placed on the "suspense list" for not providing DPOC, and that he had 90 days to submit such documentation or his application would be cancelled.  The record does not make clear whether Bednasek's application is in suspense or cancelled status at this time.

Plaintiffs Keener and Cromwell filed the original Complaint in this case on September 30, 2015.  They filed a First Amended Class Action Complaint on November 17, 2016, alleging class claims for the first time.  A Second Amended Class Action Complaint was filed on January 21, 2016, adding Bednasek as a named Plaintiff.  The Third Amended Complaint was filed on March 21, 2016, alleging the following class claims: (1) Fourteenth Amendment due process violation; (2) violation of § 8(a)(1) of the NVRA  based on the removal of names of otherwise qualified voters from the statewide voter registration database; (3) violation of § 8(a)(3) of the NVRA because the regulation allows for removal of the names of voters from the statewide voter database for reasons not permitted by the NVRA; (4) violation of § 8(c)(2)(A) of the NVRA, which requires the State to complete any program to remove names from the list of eligible voters no later than 90 days before a primary election; and (5) Privileges and  Immunities Clause violation based on the State's coordination with only Kansas state agencies to verify DPOC.

## II.     Motion to Dismiss

Secretary Kobach's motion raises constitutional and statutory challenges to each Plaintiff's standing to assert the claims alleged in the Third Amended Complaint.  He further argues that the claims brought by Plaintiffs Keener and Cromwell are moot.  The Court first addresses the constitutional justiciability issues, and then proceeds to consider the notice provision under the NVRA.

### A.     Standing and Mootness

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  As the Supreme Court has explained, "[i]n limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently

threatened injury to persons caused by private or official violation of law.  Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action."[8]  One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing.  That doctrine requires federal courts, before considering the merits of an action, to "satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction."[9]  Standing considers whether there is a case or controversy at the time the action is filed, while "mootness ensures it remains one at the time a court renders a decision."[10]  "Failure to satisfy the requirements of either doctrine places a dispute outside the reach of the federal courts."[11]

### 1.      Standing

The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[12]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of

---

[8]*Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[9]*Id.* at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[10]*Brown v. Buhman*, –F.3d–, 2016 WL 2848510, at*8 (10th Cir. May 13, 2016).

[11]*Id.*

[12]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

the litigation."[13]  Standing is evaluated based on the facts as they exist at the time the Complaint is filed.[14]  At the motion to dismiss stage, the Court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim,'"[15] and "general factual allegations of injury resulting from the defendant's conduct may suffice.'"[16]  The Court "must construe the Complaint in favor of the complaining party."[17]

### a.    Keener and Cromwell

Defendant Kobach argues that Plaintiffs Keener and Cromwell "lack standing" because they are now registered to vote in Kansas.  But it is undisputed that at the time the Complaint was filed on September 30, 2015, they were not registered to vote.  On that date, their applications were held in suspense for failure to provide DPOC.  This is sufficient to show an injury for standing purposes.

### b.    Bednasek

Defendant argues that Plaintiff Bednasek cannot show that his injury was caused by the Kansas DPOC law, or that his injury would be redressed by a favorable decision, because he is not entitled to register to vote in Kansas due to his Texas residence.  Plaintiffs argue that Bednasek is a Kansas resident for purposes of voter registration, and thus eligible to register to vote but for the Kansas DPOC law.  To show that his injury is fairly traceable to Defendant's conduct, Plaintiff need not show that Defendant's conduct was the "proximate cause" of his injury in fact.[18]  But "[i]f 'speculative inferences are necessary to connect [a plaintiff's] injury to

---

[13]*Id.* at 561; *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[14]*Tandy*, 380 F.3d at 1284.

[15]*Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[16]*Id.*

[17]*United States v. Sup. Ct. of N.M.*, –F.3d–, 2016 WL 3166830, at *6 (10th Cir. June 7, 2016).

[18]*Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008).

the challenged action,' this burden has not been met.  Moreover, where 'the independent action

of some third party not before the court'—rather than that of the defendant—was the direct cause

of the plaintiff's harm, causation may be lacking."[19]  And to be redressable, Plaintiff must show

that it is likely, and not merely speculative, that his injury will be redressed by a favorable

decision.[20]

In addition to being a United States citizen, to register to vote in Kansas, a person must

"reside in the voting area in which he or she seeks to vote."[21]  For purposes of voter registration,

"residence" "means the place adopted by a person as such person's place of habitation, and to

which, whenever such person is absent, such person has the intention of returning."[22]  Intent is an

important consideration for determining residency under this definition, but the Court must also

consider a registrant's "objective actions evidencing [his] intent."[23]  "[A] citizen has the right to

change his residence permanently or temporarily, and . . . "[w]hether he does so, or which he

does, is determined by his acts and his intentions."[24]  On his voter registration application,

Bednasek signed an attestation of Kansas residence, and he stated numerous times during his

deposition that he lives in an apartment in Lawrence, Kansas, that he considers Kansas his

residence, and that he intends to return whenever he is absent.  The Court has reviewed the

evidence submitted by both sides on this issue, including the entire transcript of Bednasek's

---

[19]*Id.* at  1225 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

[20]*Lujan*, 504 U.S. at 561

[21]Kansas Constitution art. 5, § 1.

[22]K.S.A. § 25-407.

[23]*Warren v. Gaston*, 55 F. Supp. 2d 1230, 1237 (D. Kan. 1999) (relying on *Kansas v. Corcoran*, 719 P.2d 999 (Kan. 1942)).

[24]*Id.*

February 16, 2016 deposition.  The allegations and evidence of Bednasek's intent support his claim of Kansas residency for purposes of voter registration.

Defendant Kobach points to the following actions by Bednasek that belie his stated intent to maintain a Kansas residence: (1) his January 2016 Texas driver's license; (2) his Texas automobile registration and insurance; (3) his non-resident status at KU; and (4) his equivocal answers at the deposition about whether he intends to become a Kansas resident for tuition purposes.

The Court agrees with Plaintiff that the facts upon which Defendant relies all relate to the residency definition for purposes of tuition.  That definition is much stricter than K.S.A. § 25-407.  Under K.S.A. § 76-729 and K.A.R. § 88-3-2, "residence" for fee purposes is the same definition contained in K.S.A. § 25-407, but with the following caveat: "A person shall not be considered a resident of Kansas unless that person is in continuous physical residence, except for brief temporary absences, and intends to make Kansas a permanent home, not only while in attendance at an educational institution, but indefinitely thereafter as well."[25]  The regulation provides a list of factors that help determine whether a person is a resident for fee purposes, and importantly, states that "[v]oting or registration for voting in Kansas" does not constitute sufficient evidence of a change to Kansas residence, standing alone.[26]  The fact that Bednasek pays non-resident tuition does not dictate a finding that he is a nonresident for purposes of voter registration.  Unlike the voter registration provisions, this regulation provides that "[m]aintenance of ties with another state or country, including financial support, voting, payment of personal property taxes, registering a vehicle or securing a driver's license in that state or country, may be considered sufficient evidence that residence in the other state or country has

---

[25] K.A.R. § 88-3-2(a).

[26] K.A.R. § 88-3-2(c).

been retained."[27]  While the Court agrees that under this regulation, the Board of Regents could conclude that Bednasek is a non-resident for fee purposes, it does not dictate the Court's inquiry about whether Bednasek is a resident for purposes of voter registration.

Further, the Court finds that neither Bednasek's Texas driver's license, nor his Texas automobile registration and insurance, objectively disprove Bednasek's repeated attestations of Kansas residency, as defined in K.S.A. § 25-407.  Instead, these documents evidence that Bednasek is a college student who is receiving some financial support from his parents. Importantly, the guidance drafted by Defendant Kobach and the Kansas County Clerks in their document, Kansas Election Standards, makes clear that residency is not determined by vehicle registration, and that permanent and primary residency are not legally relevant inquiries.

> The key word is intent.  The registrant is allowed by law to determine his/her place of residence according to their intent, and it is difficult for another person to disprove it.
> Another relevant statute is KSA 25-2309, which governs the registration process and the design of the application form. Subsection (b)(2) requires the applicant to provide his/her "place of residence, including specific address or location. . . ."
> A registrant's address is determined by the registrant. For voter registration purposes, residency is not related to or affected by vehicle registration, tax payment, utility hookups, or census enumeration. When questions arise, the U.S. Census determines residency as the place where a person usually sleeps. This rule is not applied in voter registration.
> Further, the terms legal residence, permanent residence and primary residence are not part of the definition of residence for voter registration purposes.[28]

Defendant points the Court to certain provisions of the Kansas Motor Vehicle Driver's License Act ("KMVDLA"), which he argues preclude a person from registering to vote in the State of Kansas while maintaining a driver's license from another jurisdiction.  Because

---

[27]K.A.R. § 88-3-2(e).

[28]Office of the Kansas Secretary of State and the Kansas County Clerks and Election Officials Association, Kansas Elections Standards, Ch. I, Voter Registration at I-10 (last revised July 7, 2014), available at http://www.kssos.org/forms/elections/election_standards/ChapI-VoterRegistration.pdf.

Bednasek obtained a Texas driver's license in January 2016, shortly after applying to register to vote in Kansas, Defendant argues he is precluded from registering to vote in Kansas.[29]  The Court disagrees that these statutes resolve Bednasek's residency for purposes of voter registration.  As Defendant argues, the KMVDLA defines "nonresident," but only to the extent that term is "used in the motor vehicle drivers' license act."[30]  This is not the operative definition for purposes of voter registration.  For purposes of that statute, "nonresident" is defined as:

> every person who is not a resident of this state. For the purposes of the motor vehicle drivers' license act any person who owns, rents or leases real estate in Kansas as such person's residence and engages in a trade, business or profession within Kansas or registers to vote in Kansas or enrolls such person's children in a school in this state or purchases Kansas registration for a motor vehicle, shall be deemed a resident of the state of Kansas 90 days after the conditions stated in this subsection commence, except that military personnel on active duty and their military dependents who are residents of another state, shall not be considered residents of the state of Kansas for the purpose of this act . . . ."[31]

It is undisputed that Plaintiff rents real estate in Kansas.  To meet the definition of "resident," for the purpose of obtaining a driver's license, Plaintiff must therefore meet one of the other four criteria listed in the statute, one of which is registering to vote in Kansas.

Defendant's interpretation of the KMVDLA actually supports Plaintiff's standing allegations: Plaintiff could be a resident for purposes of obtaining a Kansas driver's license if he registered to vote in Kansas.  But he cannot register to vote unless he provides DPOC under the challenged law.  The evidence shows that Plaintiff's driver's license was set to expire after he attempted to register to vote in Kansas.  He therefore could not obtain a Kansas driver's license without registering to vote, or complying with K.S.A. § 8-234a(a)(2) through some other qualifying conduct.  The Court finds that this statute does not negate Bednasek's standing.

---

[29]Bednasek was added as a Plaintiff to this case in the Second Amended Complaint, filed on January 21, 2016.  Doc. 58.

[30]K.S.A. § 8-234a(a)(2).

[31]*Id.*

Instead, it actually shows that enforcement of the DPOC law not only caused him not to be registered to vote, but also prevented him from obtaining a Kansas driver's license under this statute.

Bednasek recalls receiving two letters from the county clerk's office in December 2015 and January 2016, telling him he was being placed on the "suspense list" for not providing DPOC, and that he had 90 days to submit such documentation or his application would be canceled.  After this lawsuit was filed, Defendant Kobach obtained information that called into question Plaintiff's Kansas residency.  As the Court has explained, however, under the standard that applies at the motion to dismiss stage, Plaintiff has made specific allegations in the Second Amended Complaint, as supplemented by evidence submitted with the motion, that show that his suspense or cancelled registration status in the ELVIS system is fairly traceable to the Kansas DPOC law and regulation and can be redressed by a favorable decision.

Finally, Defendant Kobach argues that even if Bednasek is a Kansas resident, any injury is self-inflicted and thus not traceable to the DPOC law because he has admitted to possessing a birth certificate, yet chooses not to submit it to complete his voter registration.  Defendant further points the Court to the fact that Bednasek was recruited by a Kansas Democratic Party official to register to vote, suggesting that because he deliberately withheld his DPOC, he cannot show an injury.  Defendant is correct that Plaintiff cannot demonstrate causation if the injury alleged is self-inflicted.[32]  But here, Plaintiff's suspense or cancelled status was not initiated by his own conduct.  His injury was due to the DPOC requirement alone.  The self-inflicted harm cases upon which Defendant relies deny standing where the plaintiff "incurred certain costs as a reasonable

---

[32] *See Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 177 (D.C. Cir. 2012).

reaction to a risk of harm" when the harm itself is not certainly impending.[33]  Plaintiff's decision

not to produce his birth certificate at the time of application does not deprive him of the right to

challenge the allegedly unconstitutional law.[34]  It has been long held that a person does not

forfeit standing simply because he is a "test plaintiff."[35]  The fact that Plaintiff Bednasek knew

that he would not be registered to vote in Kansas without providing his DPOC does not negate

the injury he has suffered.[36]  Plaintiff Bednasek has standing to assert the claims alleged in this

case.

### 2.      Mootness (Keener and Cromwell)

Notwithstanding Plaintiffs Keener and Cromwell's injuries at the time this suit was filed,

"[a]n 'actual controversy must be extant at all stages of review, not merely at the time the

complaint is filed.'"[37]  "If an intervening circumstance deprives the plaintiff of a 'personal stake

in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed

and must be dismissed as moot."[38]  Defendant Kobach argues that Plaintiffs' registrations were

completed after the complaint was filed, thereby depriving them of a personal stake in the

litigation.  Plaintiffs argue that three exceptions to the mootness doctrine apply here: (1)

voluntary cessation of the defendant's conduct, (2) "capable of repetition, yet evading review,"

and (3) a "class action exception."

---

[33]*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013); *see also Nova Health Sys. V. Gandy*, 416 F.3d 1149, 1156 n.8 (10th Cir. 2005) (noting injury was self-inflicted where abortion clinic adopted parental consent requirement despite the fact that the challenged statute allowed for a less intrusive parental notification requirement).  Both of these are pre-enforcement cases.  The instant case deals with actual enforcement of the DPOC law and regulation by Defendants.

[34]*See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[35]*See, e.g.*, *Evers v. Dwyer*, 358 U.S. 202, 204 (1958).

[36]*See Pierson v. Ray*, 87 S. Ct. 1213, 1220 (1967).

[37]*Brown*, 2016 WL 2848510, at*10.

[38]*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

### a.      Voluntary Cessation

Under this exception to the mootness doctrine, "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."[39]  Otherwise,

> a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[40]

Plaintiffs argue that they could be subject to the DPOC law and regulation again when they renew their driver's licenses, or if they move out of Kansas and back again.  But a Kansas regulation makes clear that Plaintiffs could not be denied registration again for failure to provide DPOC: "A registered voter who has previously provided sufficient evidence of United States citizenship with a voter registration application in this state shall not be required to resubmit evidence of United States citizenship with any subsequent voter registration application."[41]  To the extent Plaintiffs suggest that moving to another county might trigger a renewed request for DPOC, the statute appears to preclude such action in subsection (p): "A registered Kansas voter who moves from one residence to another within the state of Kansas or who modifies such voter's registration records for any other reason shall not be required to submit evidence of United States citizenship." Under these circumstances, the Court finds that Defendant Kobach has demonstrated that Plaintiffs Keener and Cromwell will not be required to resubmit DPOC in

---

[39]*Brown*, 2016 WL 2848510, at*11 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)).

[40]*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

[41]K.A.R. § 7-23-14.

order to register to vote at a later time; therefore he has met his burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

### b.   Capable of Repetition Yet Evading Review

The next exception to the mootness doctrine applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."[42]   The Court acknowledges that "'challenges to election laws are one of the quintessential categories of cases' capable of repetition yet evading review 'because litigation has only a few months before the remedy sought is rendered impossible by the occurrence of the relevant election.'"[43]   But as described under the voluntary cessation exception, Kansas law forecloses the kind of recurrent treatment that Plaintiffs argue in their motion could occur. Changing residence, whether within Kansas or by moving out of state and back again, would not require Plaintiffs Keener and Cromwell to resubmit their DPOC in order to re-register to vote. Although it is true that Plaintiffs allege reliability problems with the ELVIS system, the Court cannot find that these concerns, standing alone, render the registration problems capable of repetition as to these Plaintiffs.[44]

The Court is likewise not persuaded that Plaintiffs' cited authority supports the proposition that the alleged violation need not be capable of repetition with respect to the named Plaintiff where there is a strong public interest in the case being decided on the merits.  Plaintiff relies on language in the footnotes of two Supreme Court opinions.  First, Plaintiffs cite

---

[42]*Brown*, 2016 WL 2848510, at*10.

[43]*Parker v. Winter*, –F. App'x –, 2016 WL 1425890, at *2 (10th Cir. Apr. 12, 2016) (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir.2005)).

[44]*See id.* (finding the second factor satisfied where the named Plaintiff was capable of running for office again, despite the fact that there was no evidence in the record that he intended to run for office again).

*Anderson v. Celebrezze*,[45] which considered a constitutional challenge to Ohio's early filing

deadline for independent candidates.    Second, in *Storer v. Brown*, the Court considered a

constitutional challenge to a California statute that made it more difficult for politically

unaffiliated candidates to run for office.[46]  In both cases, the Court found no mootness despite the

election being over, because the controversy is capable of repetition yet evading review.[47]  The

Court stated that the exception "in the context of election cases, is appropriate when there are 'as

applied' challenges as well as in the more typical case involving only facial attacks.  The

construction of the statute, an understanding of its operation, and possible constitutional limits on

its application, will have the effect of simplifying future challenges, thus increasing the

likelihood that timely filed cases can be adjudicated before an election is held."[48]  But here,

Defendant does not contend that the case is moot because an election has passed.  Plaintiffs' case

challenges the registration procedure; a procedure that no longer applies to Keener and Cromwell

for the upcoming election, or any future election.

The Court has more recently clarified in the election context that the capable of repetition

exception "requires a 'reasonable expectation'  or a 'demonstrated probability' that 'the same

controversy will recur involving the same complaining party.'"[49]  The Court repeated its

statement in *Storer*, that the exception may apply in both as-applied and facial challenges to

election laws, and as such, there need not be repetition of "every 'legally relevant' characteristic

of an as-applied challenge—down to the last detail."[50]  In that case, the doctrine applied because

---

[45]460 U.S. 780 (1983).

[46] 415 U.S. 724,  737 n.8 (1974).

[47]*Id.*; 460 U.S. at 784 n.3.

[48]*Storer*, 415 U.S. at 737.

[49]*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).

[50]*Id.*

there was "a reasonable expectation that the same controversy involving the same party will recur."[51]  The Court cannot find a reasonable expectation of the same controversy involving Keener and Cromwell in this case given the regulation that prohibits the State from requiring them to provide proof of citizenship upon moving within the state, or out of the state and back again.

**c.      Class Action Exceptions**

Finally, Plaintiffs argue that a class action exception to mootness applies here because of the pending motion for class certification.  But Plaintiffs' reference to a "class action exception" is a misnomer.  The Tenth Circuit has characterized the mootness inquiry in the class action context as follows:

> [T]he Supreme Court has applied the mootness doctrine less strictly in the class action context. In light of the relative independence of the class entity from any one party, the Court has recognized the more "flexible character of the Art. III mootness doctrine" in the class action context.  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).  Thus, because a certified class becomes an independent juridical entity capable of satisfying the standing requirements of Article III, the mooting of a named plaintiff's claims after class certification does not moot the claims of the class. *See Franks v. Bowman Transp. Co*., 424 U.S. 747, 755–56, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). And also, if the named plaintiff's claim becomes moot during the pendency of an appeal challenging the district court's denial of class certification, the appellate court is not divested of jurisdiction.  *Geraghty*, 445 U.S. at 404 & n. 11, 100 S.Ct. 1202.  Nor is an appellate court divested of jurisdiction if a defendant offers full settlement of the named plaintiffs' claims, over their objections, after the district court denies class certification. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).
>
> The Supreme Court has also suggested two situations in which a class may be certified despite the mooting of the named plaintiff's claim prior to the district court's certification decision: (1) when the plaintiff's claim is " 'capable of repetition, yet evading review,' " and (2) when the plaintiff's claim is "inherently transitory [such] that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."  *Geraghty*, 445 U.S. at 398–400, 100 S.Ct. 1202 (quoting

---

[51]*Id.* at 464.

> *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)).
> We have previously applied the "capable of repetition, yet evading review"
> exception to mootness in the class action context, permitting a class action to
> proceed despite the potential mootness of the named plaintiffs' claims in a case
> involving conditions at a school for juvenile boys.  *See Milonas v. Williams*, 691
> F.2d 931, 937–38 (10th Cir.1982).[52]

Another potential mootness exception may apply where a defendant "picks off" the named

plaintiffs before a class action can be certified.[53]

Plaintiffs propose to certify a class that includes individuals who have been placed "in

suspense," or cancelled under K.A.R. § 7-23-15, and are therefore subject to removal or have

been removed from the ELVIS database.  Since Keener and Cromwell are now registered Kansas

voters, they could not represent such a class.[54]  The Court finds that none of the class action

mootness exceptions apply here because the case will not evade review if these two Plaintiffs'

individual claims are moot. This case remains justiciable as to Plaintiff Bednasek, so there is no

need for Cromwell and Keener's claims to relate back in order for the case to continue, and in

order to pursue a motion for class certification.[55]

But even if relation back was necessary here, Cromwell and Keener have not shown that

the mootness exceptions apply to them.  For the reasons already explained, the capable of

repetition yet evading review exception does not apply because Plaintiffs cannot show that the

alleged injury is capable of recurring with respect to Cromwell and Keener.  The inherently

transitory exception applies where "(1) it is uncertain that a claim will remain live for any

---

[52]*Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1138–39 (10th Cir. 2009).

[53]*See, e.g.*, *Wilson v. Gordon*, 822 F.3d 923, 947 (6th Cir. 2016); *Fontenot v. McCraw*, 777 F.3d 741, 747–51 (7th Cir. 2015); *Lucero v. Bureau of Collection Recovery*, 639 F.3d 1239, 1250 (10th Cir. 2011).

[54]*See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753–57 (1976); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (explaining that the named Plaintiff must show an injury at the time the complaint is filed, and "must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court" (emphasis added)).; *Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 97 n.4 (2d Cir. 2008).

[55]*See Fontenot*, 777 F.3d at 751.

individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint."[56]  Plaintiffs have made no showing as to the first requirement of this exception.  The class includes those who are held in suspense or cancelled due to their failure to show DPOC when applying to register to vote.  The only individuals within the class whose claims could become moot are those for whom the State possesses DPOC.  The record makes clear that Bednasek's  DPOC is not within the State's possession. Nor is there any indication in the record of the number of individuals who are part of the putative class that may be subject to later registration if the State is able to confirm DPOC with other Kansas state agencies, as it did with Cromwell and Keener.  There is no reason to find uncertainty that any individual claim could remain live long enough for the court to rule.[57]  The inherently transitory exception therefore does not apply.

Finally, some courts have allowed class claims to relate back where a defendant has the ability to "pick off" successive plaintiffs' claims by tendering to each named Plaintiff their damages and thereby preventing any plaintiff from obtaining a decision on class certification.[58] But this exception applies where a class certification motion is filed and diligently pursued at the time the named plaintiff's claim becomes moot.[59]  Keener and Cromwell's claims became moot

---

[56]*Salazar v. King*, 822 F.3d 61, 72-75 (2d Cir. 2016) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)).

[57]*See id.* at 74 (finding this element met where record showed that application process at issue took  six months at the most); *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010) (finding first element met where named plaintiffs were county jail inmates whose incarceration is subject to several "unpredictable factors.").

[58]*See, e.g.*, *Fontenot*, 777 F.3d at 750 (discussing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir.1981)).

[59]*See Brunet v. City of Columbus*, 1 F.3d 390, 400 (6th Cir. 1993) (collecting cases); *see also Fontenot*, 777 F.3d at 750 (explaining that the current status of this exception " may be in doubt" given the recent Supreme Court decision in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1531 (2013)); *cf. Campbell-Ewald v. Gomez*, 136 S. Ct. 663, 669–70 (2016) (holding that unaccepted offer of judgment was only a proposal and does not moot a plaintiff's case).

on October 6 and November 10, 2015, respectively.  The first class action complaint was not filed until November 17.  Plaintiffs filed their motion for class certification on January 25, 2016. Therefore, neither a class action complaint nor a motion for class certification had been filed at the time that Cromwell and Keener's claims became moot. The key to this exception is that "the defendant is on notice that the named plaintiff wishes to proceed as a class, and the concern that the defendant therefore might strategically seek to avoid that possibility exists."[60]  Defendant was not on notice at the time Plaintiffs' claims became moot that Plaintiffs intended to proceed as a class.  Therefore, this exception to mootness would not apply to Cromwell and Keener.

For all of the reasons explained, the Court finds Plaintiffs Cromwell and Keener must be dismissed on mootness grounds.

## B.    NVRA Notice

The NVRA requires a person aggrieved by the Act to "provide written notice of the violation to the chief election official of the State involved."[61]  If no corrective action is taken within 90 days of receipt, the aggrieved person "may" file a civil action as to the violations specified in the notice.[62]  None of the Plaintiffs in this action provided this statutory notice before filing suit.  Defendant Kobach argues that failure to abide by the notice provision is a jurisdictional bar to suit.  Plaintiffs argue that the provision is a non-jurisdictional exhaustion requirement, that Defendant Kobach had been provided notice that K.A.R. § 7-23-15 in the form of public comments during the rule-making process, and that providing notice and waiting for the 90-day period to file suit would have been futile.

---

[60]*Wilson v. Gordon*, 822 F.3d 923, 947 (6th Cir. 2016) (discussing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)).

[61]52 U.S.C. § 20510(b).

[62]*Id.* § 20510(b)(1).

Courts have consistently interpreted the word "may" in § 20510(b) as mandatory.[63]  The basis for this interpretation is that the following subsection makes clear that only if the violation is not corrected within 90 days from the notice, then the complainant may file suit.[64]  Congress intended for the notice requirement to provide states with an opportunity to comply with the NVRA before facing litigation.[65]  If the notice requirement were merely discretionary, the 90-day cure period would be superfluous.[66]  The majority of courts to consider the issue have treated this requirement not as a jurisdictional bar to suit, but instead as a pre-requisite to suit that must be pled in order to survive a motion under Fed. R. Civ. P. 12(b)(6).[67]

> To satisfy the NVRA's notice requirement, the Plaintiffs must plausibly allege
>
> an ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election. Neither the notice nor the complaint needs to specify that the violation has been actually observed, and that there is thus a "discrete violation," during the 120–day or 30–day period. It is enough that the notice letter and the complaint plausibly allege the existence of an ongoing violation within the appropriate time period, whether or not it was "discrete" during the period.[68]

Here, Plaintiffs wholly fail to allege that they sent any notice to the State prior to filing suit.  Although this prerequisite to suit may not be jurisdictional, it is mandatory.  Plaintiffs advance two reasons why they should be exempt from the NVRA's notice requirement in this

---

[63]*Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014); *True the Vote v. Hosemann*, 43 F. Supp. 3d 713, 715 (S.D. Miss. 2014); *ACLU v. Martinez-Rivera*, –F. Supp. 3d–, 2015 WL 10818661, at *9 (W.D. Tex. Mar. 30, 2015); *Broyles v. Texas*, 618 F. Supp. 2d 661, 692 (S.D. Tex. 2009) ;

[64]§ 20510(b)(2).  There is one exception to the notice requirement: when the alleged violation occurs within thirty days prior to an election.  § 20510(b)(3).  There is no dispute that this exception does not apply here.

[65]S. Rep. 103-6, at 21 (1993) ("An essential element of an effective civil enforcement program is a requirement for notice of any complaint regarding its implementation to the appropriate election officials together with a process for its administrative resolution before legal action may be commenced.").

[66]*Broyles*, 618 F. Supp. 2d at 692.

[67]*See, e.g.*, *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044 (9th Cir. 2015); *Martinez-Rivera*, 2015 WL 10818661, at *9.

[68]*Cegavske*, 800 F.3d at 1044; *Martinez-Rivera*, 2015 WL 10818661, at *9  ("To determine whether a party has provided adequate notice, a Court is not limited to the complaint alone, but may look to documents incorporated into the complaint by reference.").

case: Defendant Kobach was provided notice of the alleged violations during the rulemaking process when K.A.R. § 7-23-15 was being considered, and providing notice would be futile.  The Court is not persuaded by either argument.

Plaintiffs point the Court to two written comments submitted to Defendant Kobach during the public comment period when K.A.R. § 7-23-15 was being considered.  State Representative Ann Mah appeared on September 2, 2015, and submitted written comments opposing the regulation.[69]  Her criticism of the rule included a contention that it would violate the NVRA by removing voters from the voter rolls on grounds not authorized by the Act.  Also, Michael Smith delivered prepared remarks on September 2, 2015, that included a concern that requiring Kansans to show DPOC in order to register to vote would violate the NVRA.[70]  But these comments were made before the rule was passed, expressing concerns about the impact of the proposed rule.  No notice was given to the State after the challenged regulation went into effect.  Indeed, this case was filed three days before the effective date of K.A.R. § 7-23-15.  To allow such comments to be a substitute for notice would effectively negate the NVRA's notice requirement.  In the statutory context, it would allow the notice requirement to be met before a law was passed if any person publicly expressed concern that it violated the statute.

Even under the case relied upon by Plaintiffs, *Miller v. Association of Community Organizations for Reform Now (ACORN)*, the Sixth Circuit Court of Appeals found that one of the plaintiffs— an organizational plaintiff—had provided Michigan with notice of suit, and therefore the individual plaintiffs were not required to provide separate notice.[71]  Here, none of the Plaintiffs allege a demand letter or any other form of notice was sent by them to the State

---

[69]Doc. 95-2, Ex. 3 at 4.

[70]Doc. 95-2, Ex. 4.

[71]129 F.3d 833, 838 (6th Cir. 1997).

prior to filing suit.  In *Miller*, the Sixth Circuit found that requiring the individual plaintiffs to provide a separate notice would have been unnecessary because Michigan had already received notice from ACORN and then made clear through an executive order that it would not comply with the NVRA unless federal funds were provided, contending that the NVRA violated the Tenth Amendment.[72]  Here, there is no evidence that the State ignored actual notice of an ongoing violation of the NVRA.  Any notice that was provided would have been before the alleged ongoing violation occurred—before the regulation went into effect.

Similarly, the Court cannot find that futility is an excuse for failing to provide statutory notice in this case.  First, only the Sixth Circuit in *Miller* has explicitly held that futility may excuse a NVRA litigant's failure to provide statutory notice of alleged violations.  This decision has been criticized, and the recent decisions to consider the issue have determined that the notice requirement is mandatory and distinguish the facts from *Miller*.[73]  Similarly, the facts in *Miller* are distinguishable from the facts of this case.  The State did not receive actual notice after the challenged law went into effect by the named Plaintiffs or any other party.  Thus, it had no opportunity to achieve compliance with the Act before Plaintiffs filed suit, contravening Congress' intent in creating the notice provision.  Moreover, there is no indication that Kansas "made clear its refusal to comply with the Act," as the court found in *Miller*.  Indeed, Defendant contends that the regulation does not run afoul of the NVRA.  The Court therefore cannot find a basis for excusing Plaintiffs from complying with the pre-suit notice requirement set forth in 52

---

[72]*Id.*

[73]*See Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014); *True the Vote v. Hosemann*, 43 F. Supp. 3d 713, 715 (S.D. Miss. 2014); *ACLU v. Martinez-Rivera*, –F. Supp. 3d–, 2015 WL 10818661, at *9 (W.D. Tex. Mar. 30, 2015); *Broyles v. Texas*, 618 F. Supp. 2d 661, 692 (S.D. Tex. 2009) .

U.S.C. § 25010(b).  Accordingly, the NVRA claims alleged in Counts II, III, and IV of the Third

Amended Complaint must be dismissed.

## III.    Motion for Class Certification

Plaintiffs move to certify the following class:

> all similarly situated persons who are United States Citizens and Kansas residents
> duly qualified, but for the operation of K.S.A. § 25-2309(l), as electors for local,
> state and federal elections in Kansas and have been placed "in suspense" for
> failure to submit proof of citizenship as required by K.S.A. § 25-2309(l) since
> January 1, 2013, and are subject to removal, or have been removed, from the
> Kansas statewide voter registration database pursuant to K.A.R. § 7-23-15.

Fed. R. Civ. P. 23 governs class actions in federal court.  The court possesses significant

latitude in deciding whether or not to certify a class.[74]  And whether a case should be allowed to

proceed as a class action is an intensely fact-based question that is fraught with practical

considerations.[75]  In deciding whether the proposed class meets the requirements of Rule 23, the

Court may accept Plaintiff's substantive allegations as true, but it "need not blindly rely on

conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and

factual issues presented by plaintiff's complaints."[76]  The Court must conduct a "rigorous

analysis" to ensure that Plaintiff's putative class meets the requirements of Rule 23.[77]

As the party seeking class certification, Plaintiff must show "under a strict burden of

proof" that their putative class meets the requirements of Rule 23.[78]  Plaintiff must first satisfy all

four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all

---

[74]*Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cnty. Comm'rs,* 543 F.3d 597, 603 (10th Cir. 2008)).

[75]*See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[76]*See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (citation omitted).

[77]*D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted).

[78]*Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct 1184, 1194 (2013).

members is impracticable, (2) questions of law or fact are common to the class, (3) Plaintiff's claims or defenses are typical of the claims or defenses of the class and (4) Plaintiff will fairly and adequately protect the interests of the class.[79]  These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation.  If the requirements of Rule 23(a) are met, Plaintiff must then show that their case fits within one of the categories described in Rule 23(b).[80]

Plaintiff argues that this case fits within Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Under this provision: (1) Defendants' "actions or inactions must be based on grounds generally applicable to all class members";[81] and (2) final injunctive relief must be "appropriate for *the class as a whole*."[82]  The Tenth Circuit interprets this requirement as demanding "a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."[83]

Another consideration in the Rule 23(b)(2) analysis is whether class certification is necessary.[84]  Defendant argued at the hearing on this motion that the class certification motion should be denied because all of the putative class members will benefit from the requested injunctive relief that is issued on behalf of the named Plaintiff.  Cases in this circuit suggest that

---

[79]Fed. R. Civ. P. 23(a).

[80]*See* Fed. R. Civ. P. 23(b).

[81]*Shook*, 543 F.3d at 604.

[82]*Id.*

[83]*Id.*

[84]*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1548 (10th Cir. 1994); *see also M.R. v. Sch. of Comm'rs of Mobile Cnty.*, 286 F.R.D. 510, 518–521 (S.D. Ala. 2012) (collecting cases); Charles Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure § 1785.2 (3d ed.); Newburg § 4:35 ("As of 2012, courts in six circuits have applied some version of necessity analysis," including the Tenth Circuit).

denying class certification on this basis is appropriate: (1) where the nature of the rights asserted require that the injunction run to the benefit of all persons similarly situated;[85] and (2) where there is little risk of the named plaintiffs' claims becoming moot during a live controversy.[86] The District Court for the District of Columbia has observed that "[c]lass certification is particularly unnecessary where, as here, 'the suit is attacking a statute or regulation as being facially unconstitutional.'"[87]   This is because if the Court declares the statute unconstitutional, government officials must discontinue enforcement, which would apply to all potential class members.[88]   Indeed, at the class certification hearing, Defendant Kobach stipulated on the record that any injunctive or declaratory relief obtained in this case would apply to all similarly-situated individuals, and not just to the named Plaintiff.

The Court agrees that class certification is unnecessary in this case.  As this Court has already explained, the nature of the rights asserted under the United States Constitution require that any declaratory or injunctive relief run to all persons similarly situated.  And there is little risk that the remaining named Plaintiff's claim will become moot.  Plaintiff has demonstrated that neither avenue available to Secretary Kobach for independently verifying Bednasek's citizenship could be used: he was not born in Kansas, and he has not obtained a Kansas driver's license. This case is not akin to the prisoner cases where the risk of mootness is high—there, the

---

[85]*E.g, Aacen v. San Juan Cnty. Sheriff's Dep't*, 944 F.2d 691, 700 & n.12 (10th Cir. 1991); *Everhart v. Bowen*, 853 F.2d 1532, 1538 n.6 (10th Cir. 1988), *rev'd on other grounds sub nom. Sullivan v. Everhart*, 494 U.S. 83 (1990).

[86]*Jackson v. Ash*, No. 12-CV-2504-EFM, 2014 WL 1230225, at *6–7 (D. Kan. Mar. 25, 2014) (erring on side of class action where claims involved "ever-changing jail or prison population"); *Clay v. Pelle*, No. 10-cv-1840-WYD-BNB, 2011 WL 843920, at 7 (D. Colo. Mar. 8, 2011) (same); *Nieberger v. Hawkins*, 208 F.R.D. 301, 318 (D. Colo. 2002) (finding necessity doctrine does not apply because patient-plaintiffs could be discharged, and "the continuation of the ordered relief should not depend on Plaintiffs finding patients willing to take up the suit.").

[87]*Mills v. District of Columbia*, 266 F.R.D. 20, 22 (D.D.C. 2010) (quoting *Alliance to End Repression v. Rochford*, 565 F.2d 975, 980 (7th Cir. 1977)).

[88]*Id.*

named plaintiffs are constantly at risk of changing as prisoners are discharged or moved.[89]  Here, while there may be a subclass of individuals for whom the State is able to verify citizenship within Kansas, there has been no showing that the *named Plaintiff*'s claims run the risk of becoming moot.  Defendants have never taken the position in this case, or in the related case of *Fish v. Kobach*, that the requested relief may only apply to the named plaintiffs.

Moreover, in weighing the benefits and burdens of Rule 23(b)(2) certification, the Court finds that the benefits of certification are minimal as compared to the burdens.[90] As discussed, there is no dispute that the benefits of the injunctive and declaratory relief sought by Plaintiff Bednasek would run to the putative class without class certification.  Plaintiffs argued at the hearing that because there are thousands of Kansans in a similar position as Plaintiff—on the suspense list or cancelled for failure to provide DPOC when applying to register to vote—they deserve notice of the proposed classwide remedy.  But the Court disagrees that the benefits of this form of notice outweigh the burdens of the class action vehicle under the circumstances of this case.  First, the Court is mindful that a subclass of this putative class that attempted to register to vote at the DMV should be receiving notices from the Secretary of State, or the County Clerks, about their right to vote in upcoming federal elections based on this Court's May 2016 ruling in the related case of *Fish v. Kobach*.[91]  The Court is also mindful that Plaintiffs in the *Fish* matter seek class certification, which would require further notices on behalf of that

---

[89]*See Jackson*,  2014 WL 1230225, at *6 ("Because the practice alleged to be occurring at the Boulder County Jail continues to affect members of the putative class who have a live stake in the controversy, if a class is certified, the claims are not mooted should the named Plaintiffs be transferred or released from the jail." (quoting *Clay*, 2011 WL 843920, at *7)).

[90]*See M.R.*, 286 F.R.D. at 519 (conducting balancing test); *Mills*, 266 F.R.D. 22–23 (same).

[91]*See, e.g.*, Case No. 16-2105, Doc. 137-1 at 11–13 (discussing notices to be sent by counties to voters affected by the Court's May 2016 preliminary injunction); Doc. 145 at 9 ("While the preliminary injunction will require another round of noticing that has the potential to confuse voters, the Court is confident that the Secretary will be able to fashion a conspicuous, easily understood notice that will apprise voters of the status of their registrations and their right to vote in federal elections in 2016.").

smaller class of individuals who attempted to apply at DMVs, and who may be entitled to vote in federal elections only.  Sending further notices to putative class members in both cases regarding their rights as members these class actions may further confuse voters and burden them with even more updates and notices about the upcoming election.  The risk of confusion is even higher given that the cases are related; because the Fish proposed class is necessarily a subset of the broader putative class in this case, some Plaintiffs would belong to both classes and therefore receive notices with respect to both.  The Court also would be required to revisit its pretrial management of this case to ensure that classwide discovery is accounted for, despite the fact that discovery was to conclude in July.  These procedures would add another layer of complexity to this proceeding, and prolong the life of the case, despite Plaintiffs' stated desire to expedite and obtain rulings on the merits as soon as possible.[92]

In sum, the Court finds that any benefit that would flow from class certification is slight as compared to the burdens associated with certifying this case as a class action.  Final injunctive and declaratory relief to the named Plaintiff in this case will benefit all potential members of the class, yet the burdens associated with class certification are substantial.  Therefore, the Court exercises its discretion against certifying the class and finds that Plaintiff has not met his burden of showing that final injunctive and declaratory relief is appropriate as to the class as a whole under Fed. R. Civ. P. 23(b)(2).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Kansas Secretary of State Kris Kobach's Motion to Dismiss (Doc. 94) is **granted in part and denied in part**.  The motion is granted as to all claims alleged by Plaintiffs Keener and Cromwell, and as to Counts II,

---

[92]*See* Doc. 92, Tr. Discovery & Sch. Conf. before Judge O'Hara, at 29–30 (expressing desire to obtain relief as soon as possible).

III, and IV of the Third Amended Complaint.  The motion is denied as to Counts I and V alleged

by Plaintiff Bednasek.

      **IT IS FURTHER ORDERED BY THE COURT** that Plaintiffs' Motion for Class

Certification (Doc. 60) is **denied**.

      **IT IS SO ORDERED.**

      <u>Dated: July 29, 2016</u>

                                           <u>S/ Julie A. Robinson</u>
                                           JULIE A. ROBINSON
                                           UNITED STATES DISTRICT JUDGE